**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Radule Bojovic, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 26 C 1397 |
| v. | ) | |
| | ) | Judge Jorge Alonso |
| Kristi Noem and Joseph Edlow, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiff's motion [11] for temporary restraining order is granted. For the reasons stated herein, the January 23, 2026 decision to revoke Plaintiff's employment authorization is temporarily enjoined, Defendants are temporarily restrained from revoking Plaintiff's employment authorization on the basis articulated in that decision, and Defendants are temporarily restrained from taking any steps to remove Plaintiff from his parent's asylum application. A status hearing is set for 3/19/26 at 9:30 am.

## STATEMENT

Plaintiff, Radule Bojovic, a native of Montenegro, has been a police officer in Hanover Park, Illinois, since January 2025, working under a valid employment authorization while his family's asylum petition is pending. On October 15, 2025, he was arrested as part of Operation Midway Blitz. In January 2026, he was notified that his employment authorization was revoked. He filed this action for judicial review of the revocation of his employment authorization. He now moves for a temporary restraining order so that he may return to work while this case is pending.

### I.    Background

Based on Plaintiff's complaint and the parties' briefs, the key facts are as follows. Plaintiff entered the United States with his parents in 2014 on visitor visas. His father filed an I-589 application for asylum that included Plaintiff, then sixteen years old, as a derivative child. During the long pendency of that application, Plaintiff applied for and received employment authorization by filing a series of I-765 applications with the United States Citizenship and Immigration Services ("USCIS"), the most recent of which resulted in the renewal of his employment authorization in September 2025.

After Plaintiff's October 2025 arrest, he was detained for approximately two weeks, then released on bond. He received a Notice to Appear, and removal proceedings were initiated against him. He returned to work in November.

On December 11, 2025, USCIS issued a Notice of Intent to Revoke ("NOIR") Plaintiff's employment authorization, notwithstanding that it had only recently been renewed. The NOIR cited 8 C.F.R. § 274a.14(b)(1) and stated that Plaintiff had been removed from his father's asylum application on December 3, 2025. Plaintiff claims that this is untrue and/or erroneous and he remains a party to his father's application under the Child Status Protection Act ("CSPA"), 8 U.S.C. § 1158(b)(3)(B). That statute provides that an adult such as Plaintiff remains eligible for asylum as a derivative child listed on a parent's pending asylum application if he was under twenty-one years old when his parent's application was filed, he remains unmarried, and the parent-applicant is still alive. *See id.*

Plaintiff timely responded to the NOIR, explaining that he remains a derivative applicant for asylum via his father's pending application. His written response was delivered to USCIS by FedEx on the due date, December 29, 2025. On January 23, 2026, USCIS issued a notice that Plaintiff's employment authorization had been revoked, stating that he had not responded to the NOIR and reiterating that he had been removed from his father's asylum application on December 3, 2025. Plaintiff claims that the decision is based on an error because FedEx timely delivered his written response, which correctly explained that the factual basis for revocation asserted in the NOIR was incorrect.

Plaintiff filed this action soon afterward, seeking judicial review of the decision under the Administrative Procedure Act ("APA"), *see* 5 U.S.C. § 706(2). Plaintiff claims that, because the CSPA's conditions for remaining on his father's asylum application are met, the USCIS decision to revoke his employment authorization was arbitrary and capricious and should be set aside.

## II.     Discussion

> When considering a motion for temporary restraining order, the Court must employ the same test as a request for a preliminary injunction: the plaintiff has the burden to show (1) a likelihood of success on the merits; (2) irreparable harm; and (3) that the balance of the equities and the public interest favors emergency relief. Fed. R. Civ. P. 65(b)(1)(A); *see Winter v. Nat. Res. Def. Council,* 555 U.S. 7, 22 (2008). The Court then weighs these factors in what the Seventh Circuit has called a "sliding scale" approach. That is, "[t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor." *Valencia v. City of Springfield*, 883 F.3d 959, 966 (7th Cir. 2018) (internal quotation marks omitted).

*Troogstad v. City of Chicago*, 571 F. Supp. 3d 901, 907 (N.D. Ill. 2021); *see* 11A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2951 (3d ed.).

### A.     Likelihood of Success

Under 8 U.S.C. § 1324a(h)(3)(B) and associated regulations, USCIS may grant employment authorization to a noncitizen who has "filed a complete application for asylum . . .

[and] whose application has not been decided." 8 C.F.R. § 274a.12(c)(8). Once an employment authorization has been issued, it can be revoked "when it appears that any condition upon which it was granted has not been met or no longer exists, or for good cause shown." 8 C.F.R. § 274a.14(b)(1)(i).[1] Plaintiff argues that he has a likelihood of success because he properly applied for and obtained employment authorization, and none of the conditions for revoking it have occurred. Defendants make two arguments in response: this Court lacks jurisdiction over this matter under 8 U.S.C. § 1252(a)(2)(B)(ii), and USCIS's revocation decision was not a final agency action.

### 1. Jurisdictional Bar of 8 U.S.C. § 1252(a)(2)(B)(ii)

Under 8 U.S.C. § 1252(a)(2)(B)(ii), courts lack jurisdiction to consider a challenge to any decision "the authority for which is specified . . . to be in the discretion of the Attorney General or the Secretary of Homeland Security." The statute governing asylum proceedings and employment authorization provides that "[a]n applicant for asylum is not entitled to employment authorization, but such authorization *may be provided* under regulation by the Attorney General." 8 U.S.C. § 1158(d)(2) (emphasis added); *see also Soni v. Jaddou*, 702 F. Supp. 3d 757, 759 (N.D. Ill. 2023) ("Although the Immigration and Nationality Act (INA) still refers to the Attorney General, the functions he exercises under the Act have been transferred to the Secretary of Homeland Security." (citing 6 U.S.C. § 557)), *aff'd,* 103 F.4th 1271 (7th Cir. 2024). Defendants argue that this jurisdiction-stripping provision applies here because the "authority" for conferring employment authorization is "specified" by § 1158(d)(2)—which provides that "such authorization may be provided under regulation"—to be within the discretion of the immigration authorities.

Plaintiff replies that § 1252(a)(2)(B)(ii) only bars review of decisions specified *by statute* to be within the discretion of the immigration authorities; the jurisdictional bar does not apply to decisions committed to their discretion *by regulation*. *See Kucana v. Holder*, 558 U.S. 233, 237 (2010) ("We hold that the key words 'specified under this subchapter' refer to statutory, but not to regulatory, specifications."). The distinction matters, according to Plaintiff, because "Congress has neither directly addressed nor mandated the issuance of employment authorization documents to noncitizen workers. Rather, employment authorization for aliens is *purely a creature of regulation*." *Kondapally v. U.S. Citizenship & Immigr. Servs.*, No. CV 20-00920, 2020 WL 5061735, at *4 (D.D.C. Aug. 27, 2020) (cleaned up) (emphasis added).

---

[1] Subsection (b)(1)(ii) further provides that employment authorization may be revoked "[u]pon a showing that the information contained in the application is not true and correct." 8 C.F.R. § 274a.14(b)(1)(ii). USCIS did not mention this provision in the NOIR, and Defendants have not relied on it in this action. Similarly, the NOIR did not mention—and Defendants do not mention— § 274a.14(a), which provides that employment authorization automatically terminates when certain enumerated conditions occur, including the passing of its expiration date without renewal, the voluntary departure of the subject, or the institution of "exclusion or deportation proceedings . . . (however, this shall not preclude the authorization of employment pursuant to § 274a.12(c) of this part where appropriate)." Given the silence of the parties on these provisions, the Court assumes that they played no part in the decision at issue here.

Plaintiff is on firmer ground. Even if § 1158(d)(2) "specifie[s]" that immigration authorities have "discretion" over employment authorization, in some sense, the discretion that the statute confers is only the discretion to promulgate regulations, and it does not follow that Defendants may ignore the resulting regulations with impunity. *Cf. Castaneira v. Noem*, 138 F.4th 540, 549 (D.C. Cir. 2025) (holding that, 8 U.S.C. § 1252(a)(2)(B)(ii) notwithstanding, USCIS's "sole and unreviewable discretion," under 8 U.S.C. § 1154(a)(1)(A)(viii)(I), to make certain determinations does not "afford[] the agency discretion to depart from its own binding regulations" in so doing); *id.* at 550 (rejecting the argument that merely "because Congress has authorized an agency to act with discretion, it can exercise this discretion without heeding its own regulations," reasoning that "this is not how administrative law works"). Plaintiff has explained that, in the NOIR that USCIS sent him, the agency cited 8 C.F.R. § 274a.14(b)(1), which provides that, once granted, employment authorization can be revoked "when it appears that any condition upon which it was granted has not been met or no longer exists, or for good cause shown." The only fact that the agency cited as "good cause" or a "condition" that "no longer exists" was his removal from his parent's I-589 application—a fact that Plaintiff contends is untrue, which contention Defendants do not address in their response brief. Plaintiff has shown that he is likely to succeed in demonstrating that USCIS has ignored the regulations it is bound to follow, in which case Plaintiff would be entitled to relief, provided the decision is a final agency action.

## 2. Finality

Only "final agency action" is subject to judicial review under the APA. 5 U.S.C. § 704. An agency action is "final" if it "'mark[s] the consummation of the agency's decisionmaking process and is 'one by which rights or obligations have been determined, or from which legal consequences will flow.'" *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 808 (2024) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)). Defendants argue that Plaintiff has not suffered any final agency action because the employment authorization issue is part and parcel of Plaintiff's removal proceedings, which are ongoing. But Defendants do not cite on-point authority, and the language of 8 C.F.R. § 274a.14(b)(2), which governs proceedings following issuance of a notice of intent to revoke employment authorization, seems to suggest otherwise. The regulation states that, after the alien has an opportunity to respond to the NOIR, the resulting "decision by the district director shall be final and no appeal shall lie from the decision to revoke the authorization." *Id.* Unlike in *Dhakal v. Sessions*, 895 F.3d 532, 539 (7th Cir. 2018), cited by Defendants, where the denial of the appellant's asylum application was not a final action because he could raise the issue again as a defense to removal, *id.* at 537, 539-40, Defendants do not point to any step in any process that gives Plaintiff the opportunity to raise this issue again before the consequences are imposed. To the contrary, he has been told that his employment authorization has been revoked, and there is no opportunity to appeal, so it seems the decision has been consummated and legal consequences are imminent.

Defendants also mention that USCIS has notified Plaintiff that it has reopened or reconsidered his application (see Dkt. No. 16-1), but the "reopen notice" does not change the analysis. *See* 5 U.S.C. § 704 ("[A]gency action otherwise final is final for the purposes of this

section whether or not there has been presented . . . an application . . . for any form of reconsideration . . . ."). If USCIS had not only reopened the revocation matter but also vacated its January 23, 2026 decision and requested further information or otherwise took substantial steps toward reinvestigating the matter, the Court might view things differently. *See, e.g.*, *6801 Realty Co., LLC v. United States Citizenship & Immigr. Servs.*, No. 15 CIV. 5958, 2016 WL 7017354, at *3 (E.D.N.Y. Nov. 30, 2016), *aff'd,* 719 F. App'x 58 (2d Cir. 2018). But so long as it appears that "the Government has re-opened [Plaintiff's] case in name only," and Plaintiff is still suffering the consequences of the decision, leaving him unable to work, the Court regards the agency action as final. *Mantena v. Hazuda*, No. 17CV5142, 2018 WL 3745668, at *6 (S.D.N.Y. Aug. 7, 2018).

Defendants' response brief is most notable for what it does not say: it does not defend USCIS's revocation decision on its own terms. That silence speaks volumes. Plaintiff has demonstrated a strong likelihood of success on the merits.

### B.      Irreparable Harm

Plaintiff argues that the sudden and complete loss of his income will cause him to suffer the risk of irreparable harm due to damage to his career prospects and his inability to meet his financial obligations. Defendants respond that these consequences do not cause irreparable harm because economic harms are not irreparable and damage to career prospects is merely speculative. Defendants are shockingly cavalier about the consequences that may flow from the loss of a person's livelihood and the interruption of a fledgling career. While the Court may expect Plaintiff to make a more detailed, individualized showing of these harms at later stages of the case, *see Verma v. USCIS*, No. CV 20-3419, 2020 WL 7495286, at *11 (D.D.C. Dec. 18, 2020), for now, the Court is persuaded that this factor weighs in Plaintiff's favor, at least slightly.

### C.      Balancing the Equities and the Public Interest

Plaintiff argues that the balance of equities and public interest, which "merge when the Government is the opposing party," *Nken v. Holder*, 556 U.S. 418, 435 (2009), favor him because a TRO would merely return him to the status quo that existed prior to the loss of his employment authorization: it would allow him to continue serving his community by maintaining law and order, rather than depriving the community of those services while this case plays out. Further, a TRO would prevent the implementation of an unlawful agency action at great cost to Plaintiff's rights. *See Jin v. Noem*, No. 25-CV-2122, 2025 WL 2551142, at *5 (C.D. Ill. Apr. 23, 2025).

Given that Plaintiff has demonstrated a high likelihood of success, the balance of harms need weigh in his favor only slightly, under the Seventh Circuit's sliding scale approach. Taking all the facts and circumstances into consideration, and accounting for the high likelihood of success, the equities weigh rather decisively in Plaintiff's favor. Plaintiff is a public servant who has not been shown to present any threat to the community (quite the opposite, if anything), and the Court fails to see what the government gains by suspending his employment without pay based on what appears likely to be, so far as the parties have shown at this early stage, a legal and/or factual error.

For all these reasons, the Court concludes that the temporary restraining order that Plaintiff requests is appropriate, and his motion is therefore granted.

**SO ORDERED.**                                        **ENTERED: March 17, 2026**

**JORGE L. ALONSO**
**United States District Judge**